**Melvin L. PETERSON, Plaintiff and Respondent,**

**v.**

**Peggy E. PETERSON, Defendant and Appellant.**

**No. 17471.**

Supreme Court of Utah.

Feb. 26, 1982.

---

**3.** Utah, 542 P.2d 1086 (1975).

**4.** See also, *Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741 (1971).

**5.** Utah, 583 P.2d 105 (1978).

Pete N. Vlahos, Ogden, for defendant and appellant.

I. Gordon Huggins, Ogden, for plaintiff and respondent.

HALL, Chief Justice:

Defendant appeals from a divorce decree, alleging error in the trial court's distribution of marital property.

Defendant and plaintiff were married in 1975, at which time they both signed an agreement providing that in the event of a divorce between them, each would receive the property which he or she had owned before the marriage. After the marriage, defendant sold her Brigham City house, receiving approximately $26,000 in equity, and moved into plaintiff's house in Roy. Defendant used a portion of the sales proceeds from her Brigham City house to remodel plaintiff's house. She claims to have spent much of the remainder of the $26,000 on routine household expenses. Plaintiff promised to repay defendant for all her remodeling expenses. To insure such repayment, plaintiff added defendant's name as beneficiary to a $26,000 saving certificate which he owned.

Plaintiff divorced defendant in 1980. At the time of trial, the property distribution agreement signed by the parties had disappeared inexplicably from a strongbox in

which it was kept. However, both parties acknowledged the existence of a written agreement "preserv[ing] each party's assets for that party." The trial court found that the parties had agreed "that defendant would be protected in regard to her property rights in an amount equivalent to the equity in her home, which was sold in the sum of $26,000.00." In dividing the property of the parties, the court declared defendant to be the owner of $9,185.76 in saving certificates, which she had purchased with a portion of the $26,000. The court also required plaintiff to pay defendant $9,000 reimbursement for her remodeling expenses and an additional $7,814.24 to make up the balance of the $26,000 total. Defendant also received all of the furniture and most of the other household effects which she had purchased for plaintiff's house, as well as several gifts given to her by plaintiff, including a car and jewelry. Finally, the trial court awarded alimony to defendant totalling $6,500 over a period of 20 months. Plaintiff received his house and other premarriage assets, including the $26,000 certificate on which he had placed defendant's name.

In appealing the trial court's property distribution, defendant does not deny that she received the equivalent of her premarital assets as provided by her written agreement with defendant. However, defendant apparently asks the Court to disregard this agreement, claiming that plaintiff misrepresented his financial status to her at the time the agreement was made and alleging bad faith, overreaching, and "deceit" on plaintiff's part.[1] Defendant contends that even if the trial court had recognized the agreement as valid, it should have required plaintiff to pay her an additional $156,400 "as a matter of equity."

Defendant summarizes her claim for an "equitable distribution" as follows:

> [I]n any event ..., the Appellant was entitled to be put back into the same position as she was prior to the time of

her marriage, as to her own private property, and was further entitled to an equitable distribution as between the assets contributed by the Appellant towards the marriage, and the income during the course of the marriage of the Respondent whereby the Appellant was not only not put back into the position that she was prior to the time of the marriage in regards to the property which she owned and the income which accrued to the Respondent, but is also entitled to some compensation for the loss of her job with its seniority, retirement, and insurance benefits, together with the contribution of her wages, unemployment compensation, and funds derived from the sale of her home to the marital estate, for the maintenance of the Respondent, with the Respondent being able to not only maintain all of his hidden assets an [sic] investments, but having gained substantially in the value of his estate, all at the expense of the Appellant [sic].

■ Defendant appears to claim that she used her own income and assets to support plaintiff during their marriage and that the trial court failed to compensate her for such expenditures. However, the only specific expenditures claimed are those relating to the improvements on and furnishings for plaintiff's house. In regard thereto, it appears that the trial court generously compensated defendant since it not only ordered reimbursement, but also awarded her many of the items purchased. The record does not support defendant's claim that she contributed additional amounts for plaintiff's benefit. Plaintiff provided her with $135 per month for household expenses, $100 per month for her personal use and $12,385 in gifts to defendant and her daughter. Defendant and her daughter also received social security and medical benefits which plaintiff had earned. In addition, the trial court required plaintiff to reimburse defendant $7,814.24 in cash for proceeds from her Brigham City house which she claimed to have spent, although defendant did not prove that any of this amount had been expended for plaintiff's benefit. It is clear that defendant received ample compensation for any depletion of her own assets for which plaintiff may have been responsible.

■ Defendant claims that the trial court should have awarded her interest on the $26,000 for the period from 1975 to 1980 in order to provide her with the full present value of her premarital assets. Defendant does not allege that plaintiff agreed to pay such interest; nor does she cite legal precedent for such an award. Instead, she again invokes vague "equitable considerations," which center around allegations that plaintiff earned interest on his own assets during this time and that plaintiff inflicted "substantial harm" on defendant by failing to reveal to her the full extent of his assets. The trial court duly weighed the above "equitable considerations" and distributed the parties' property in a manner which it found to be not only consistent with the agreement of the parties but equitable as well. As discussed above, this distribution liberally compensates defendant for any depletion of her premarital assets by plaintiff. The generosity of the trial court's allotment to defendant indicates that it may have considered the earning power of the assets expended by defendant in addition to their actual value during the period in question. In any event, defendant has shown no legal or equitable ground for this Court to add interest or appreciation to that allotment.

■ Defendant further claims, on equitable grounds, reimbursement from plaintiff for a $4,285.50 sales commission paid on the sale of her Brigham City house and for profits lost because of the timing of that sale, claiming that plaintiff forced her to sell the house. A similar claim relates to defendant's termination of her part-time job: Although defendant complains that plaintiff benefited from her income by requiring her to contribute substantially to marital expenses, she charges him with responsibility for her decision to cease working. She alleges that she is now unemployable because of medical problems and claims compensation for 10 years' wages, insurance and retirement benefits. De-

 

fendant's evidence fails to support either of these two claims. Rather, the record supports the conclusion that defendant voluntarily chose both to sell her house and to terminate her employment.

Defendant finally contends that the trial court failed to adequately set forth its findings of fact with regard to the $26,000 saving certificate on which plaintiff placed defendant's name as beneficiary. It is true that the court's findings of fact do not specifically refer to the $26,000 certificate. However, they clearly express the court's intention that plaintiff's cash payment to defendant should constitute "full and complete property settlement." Moreover, the court's conclusions of law contain the following provision:

> That plaintiff be awarded ... the $26,-000 certificate on which certificate he placed defendant's name.

The court's memorandum and decree of divorce provide similarly. The trial court's finding with respect to ownership of the $26,000 certificate is unambiguously stated in the above documents; the fact that this finding was not expressly included within the "findings of fact" section of the court's decision does not invalidate this finding.[2]

The evidence shows that the trial court's property allocation was equitable and properly effectuated the agreement between the parties. Affirmed. No costs awarded.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

**2.** See *Coronado Mining Corp. v. Marathon Oil* *Co.*, Utah, 577 P.2d 957, 960 (1978).